IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY HEAD,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF PHILADELPHIA,<br><br>　　　　　　　Defendant. | CIVIL ACTION NO. 20-5308 |

MEMORANDUM OPINION

Rufe, J.                                                         September 9, 2022

Plaintiff Gregory Head, a former Claim Adjuster for the City of Philadelphia, filed suit against the City for alleged violations of the Family and Medical Leave Act ("FMLA").[1] The City has moved for summary judgment on Head's claims.[2] For the reasons stated below, the motion will be granted.

I.   **BACKGROUND**

Head worked for the City's Department of Finance as a Claim Adjuster and received notice of the City's FMLA policy in September of 2011.[3] During his career, Head requested and received approval to take FMLA leave to care for his spouse.[4] In June of 2018, Head's request to take intermittent FMLA leave was approved.[5] In October of 2018, Head's work was deemed to be unsatisfactory as it "lack[ed] accuracy and adherence to divisional best practices and standard

---

[1] 29 U.S.C. §§ 2601, *et seq.*

[2] Def.'s Mot. Summ. J. [Doc. No. 11].

[3] Statement of Stipulated Material Facts [Doc. No. 11-4] ¶ 3.

[4] Statement of Stipulated Material Facts [Doc. No. 11-4] ¶ 6.

[5] Statement of Stipulated Material Facts [Doc. No. 11-4] ¶ 7.

operating procedures."[6] He received coaching to improve his performance until March of 2019.[7] Head then participated in a performance improvement plan from March of 2019 through June of 2019, which identified specific incidents of unsatisfactory performance.[8]

On June 18, 2019, Head submitted forms to Human Resources to renew his request for FMLA leave.[9] A few days later, the City informed Head that he had worked insufficient hours to qualify for FMLA leave and needed an additional month's worth of hours to become eligible.[10] In August of 2019, Head was demoted due to continuing performance issues.[11] When Head contacted HR to determine the status of his eligibility on October 17, 2019, he was told that the HR representative would review his record and follow up.[12] Head received a warning in November 2019 that his performance had been unsatisfactory since his demotion.[13] In January of 2020, Head was the subject of disciplinary action concerning 36 unapproved absences.[14] Head was suspended in March of 2020 for unapproved absences, and he was ultimately terminated from his employment on June 25, 2020.[15]

---

[6] Def.'s Mot. Summ. J. Ex. 22 [Doc. No. 12-22].

[7] Def.'s Mot. Summ. J. Ex. 10 [Doc. No. 12-10].

[8] Def.'s Mot. Summ. J. Ex. 10 [Doc. No. 12-10]; Def.'s Mot. Summ. J. Ex. 23 [Doc. No. 12-23].

[9] Statement of Stipulated Material Facts [Doc. No. 11-4] ¶ 9.

[10] Statement of Stipulated Material Facts [Doc. No. 11-4] ¶ 10.

[11] Def.'s Mot. Summ. J. Ex. 2 [Doc. No. 12-2].

[12] Statement of Stipulated Material Facts [Doc. No. 11-4] ¶¶ 11–12.

[13] Def.'s Mot. Summ. J. Ex. 11 [Doc. No. 12-11].

[14] Def.'s Mot. Summ. J. Ex. 27 [Doc. No. 12-26].

[15] Statement of Stipulated Material Facts [Doc. No. 11-4] ¶ 25.

**II.   LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[17] When "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," there is a "genuine" dispute over material facts.[18] To evaluate a motion for summary judgment, it is necessary to "view the facts in the light most favorable to the non-moving party" and draw "all reasonable inferences in that party's favor."[19] It is improper for a court "to weigh the evidence or make credibility determinations" as "these tasks are left to the fact-finder."[20] The non-moving party must support its opposition to the motion by pointing to evidence in the record.[21] If the evidence in favor of the nonmoving party "is merely colorable, or is not significantly probative, summary judgment may be granted."[22]

---

[16] Fed. R. Civ. P. 56(a).

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[18] *Id.*

[19] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

[20] *Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d 1998).

[21] *Celotex Corp v. Catrett*, 477 U.S. 317, 322–23 (1986).

[22] *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

### III. DISCUSSION

#### A. FMLA Interference Claim

The City first contends that it is entitled to summary judgment on Head's interference claim because he was not eligible for FMLA leave. An interference claim under the FMLA requires a plaintiff to demonstrate that:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.[23]

To be eligible for FMLA leave, an employee must have been employed "for at least 1,250 hours of service with [the] employer during the previous 12-month period."[24] The City calculates the 12-month period for FMLA eligibility on a rolling basis,[25] which is "the period measured backward from the date an employee uses any FMLA leave."[26]

Head argues that there is a genuine factual dispute as to whether he worked sufficient hours to qualify for FMLA leave during the relevant period because the City proffered only "a small portion of the relevant timesheets, and is instead relying solely on its own, self-serving spreadsheets and other methods of calculating Mr. Head's time."[27] The City responds that it has provided all relevant timekeeping records in its possession, including an FMLA Counter that shows Head's attendance record between June of 2018 and June of 2019.[28]

---

[23] *Ross v. Gihuly*, 755 F.3d 185, 191–92 (3d Cir. 2014) (citation omitted).

[24] 29 U.S.C. § 2611(2)(A).

[25] Statement of Stipulated Material Facts [Doc. No. 11-4] at ¶ 5.

[26] 29 C.F.R. § 825.200(b)(4).

[27] Pl.'s Mem. Law Opp. Mot. Summ. J. [Doc. No. 13] at 6.

[28] Def.'s Reply [Doc. No. 16] at 3; Def.'s Reply Ex. 30B [Doc. No. 16-5].

"To establish that an employee worked the requisite number of hours, an employer must provide an accurate account of the employees' hours according to the guidelines of the Fair Labor Standards Act."[29] If "an employer does not maintain an accurate record of hours worked by an employee . . . the employer has the burden of showing that the employee has not worked the requisite hours."[30] The Fair Labor Standards Act does not obligate employers to maintain timekeeping records in a particular form.[31] Head has not pointed to evidence in the record indicating that the City's calculations are inaccurate, but merely asserts that they are deficient because sign-in/sign-out sheets would offer the most precise measure of his hours.[32] Although the City did not produce physical timesheets for all of the months at issue, the employee attendance reports, payroll spreadsheets, time records, and FMLA Counter calculations all support its contention.[33]

Head instead points to emails and documents in the record that he argues show that the City's calculations are in error.[34] However, the City argues that all hours are accounted for, and it attached a highlighted spreadsheet to its Response that aligns with the dates on the emails.[35]

---

[29] *Corcino v. Banco Popular de Puerto Rico*, 200 F. Supp. 2d 507, 511 (D.V.I. 2002).

[30] 29 C.F.R. § 825.110(c)(3).

[31] 29 C.F.R. § 516.1(a).

[32] Pl.'s Mem. Law Opp. Mot. Summ. J. [Doc. No. 13] at 6. In his affidavit, Head claimed that these sign-in sheets "would be the most accurate record of the number of hours I worked." Pl.'s Ex. F, Head Aff. ¶ 3. However, Head noted in his deposition that "sometimes there wasn't a sign-in sheet that would enable us to sign in." Def.'s Mot. Summ. J. Ex. 1 [Doc. No. 12-3] at 42. Further, Head acknowledged that the City employees transitioned to using "ID badges to basically punch the clock" during his employment. Def.'s Mot. Summ. J. Ex. 1 [Doc. No. 12-3] at 42. Additionally, Head stated that he did not keep independent records of his leave time. Statement of Stipulated Material Facts [Doc. No. 11-4] ¶ 13; Def.'s Mot. Summ. J. Ex. 3 [Doc. No. 12-3] at 27–29, 31.

[33] Def.'s Reply [Doc. No. 16] at 3. Additionally, evidence in the record indicates that the City started using card swipes to track employees' time in approximately May of 2019. Def.'s Mot. Summ. J. Ex. 1 [Doc. No. 12-3] at 33.

[34] Pl.'s Mem. Law Opp. Mot. Summ. J. [Doc. No. 13] at 4, 6.

[35] Def.'s Reply [Doc. No. 16] at 9–10.

Head did not respond to this filing to dispute this accounting of his hours, and has not otherwise identified how the City's methods of recordkeeping are incorrect.[36]

The City's calculations are supported further by an affidavit from a clerk who reviewed Head's employment records between January 1, 2018 and June 26, 2020 and determined that "there was no point in which Mr. Head had worked 1,250 hours in the previous twelve months" from the time of his first renewal request on June 18, 2019 until his termination on June 25, 2020.[37] Head has not disputed the accuracy of this declaration. As a reasonable factfinder could not determine that the City's accounting is inaccurate based on evidence in the record, Head is not entitled to an inference that he worked sufficient hours to qualify for FMLA leave. Summary judgment will be entered in favor of the City on Head's interference claim.

### B. FMLA Retaliation Claim

The City next argues that Head's ineligibility for FMLA leave dooms his retaliation claim. The Third Circuit has held that "a plaintiff must show that (1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights" to prevail on a retaliation claim under the FMLA.[38] Although the Third Circuit has not decided the issue of whether eligibility is a prerequisite for retaliation claims,[39] other courts have held that just "[a]s eligibility for FMLA

---

[36] Def.'s Reply [Doc. No. 16] at 10.

[37] Crafton Decl. [Doc. No. 16-3] ¶¶ 5, 11. Although Head argues that the record shows that he worked for at least 27 days after that date, he fails to acknowledge that the lookback period changed each time he made subsequent requests for FMLA leave under the City's rolling method for calculating eligibility. For example, when he wrote an email that asked about his eligibility for leave under the FMLA on October 17, 2019, the lookback period consisted of October 17, 2018 to October 17, 2019. As the lookback period had changed, working for 27 days after June 18, 2019 would not necessarily have rendered Head eligible for FMLA leave thereafter.

[38] *Ross* 755 F.3d at 193 (alterations and internal quotation marks omitted).

[39] *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 507 n.2 (3d. Cir. 2009).

benefits is necessary for interference claims, eligibility is also necessary for a retaliation claim."[40] As it is logical to assume that invoking one's right to FMLA leave is only actionable if one actually qualifies for leave under the statute, this authority is persuasive and the Court will grant the motion for summary judgment on this basis.

In the alternative, even if Head could show a right to FMLA leave, summary judgment would be warranted. In the absence of direct evidence of retaliation, courts employ "the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*."[41] This requires the plaintiff to establish a *prima facie* case, at which point "the burden shifts to the defendant to provide evidence of a legitimate non-discriminatory reason for the adverse action."[42] If the defendant satisfies this requirement, "the employee must then point to some evidence that the defendant's reasons for the adverse action are pretextual."[43]

Assuming that Head could assert a *prima facie* case of FMLA retaliation, the City has produced evidence that Head was terminated for legitimate, non-discriminatory reasons: performance issues and unexcused absences.[44] As the City has proffered legitimate, non-

---

[40] *O'Brien v. Lehigh Valley Health Network, Inc.*, No. 18-3119, 2019 WL 2642000, at *6 (E.D. Pa. June 27, 2019) (citing *Snider v. Wolfington Body Co., Inc.*, No. 16-2843, 2016 WL 6071359, at *7 (E.D. Pa. Oct. 17, 2016)). Several Courts of Appeals have held that eligibility is required for a viable FMLA retaliation claim. *See, e.g., Walker v. Elmore Cnty. Bd. Educ.*, 379 F.3d 1249, 1253 (11th Cir. 2004).

[41] *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

[42] *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802).

[43] *Id.* (citing *Lichtenstein v. Univ. Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012)).

[44] The Third Circuit has affirmed that non-FMLA leave taken in violation of the employer's policy regarding excessive absences can constitute "just cause" to terminate employment. *Smith v. Medpointe Healthcare, Inc.*, 338 F. App'x 230, 234 (3d Cir. 2009). Head is not entitled to an inference that he worked sufficient hours to qualify for FMLA leave, so his unapproved absences constituted non-FMLA leave. Moreover, the record shows that Head had performance issues prior to his request for FMLA leave in June of 2019 and that he was demoted in August of 2019. Def.'s Mot. Summ. J. Ex. 2 [Doc. No. 12-2]; Def.'s Mot. Summ. J. Ex. 22 [Doc. No. 12-22]; Def.'s Mot. Summ. J. Ex. 23 [Doc. No. 12-23]; Def.'s Mot. Summ. J. Ex. 24 [Doc. No. 12-24].

discriminatory reasons for Head's termination, the burden shifts to Head to show that these reasons were pretextual. To prevail, a plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably . . . disbelieve the employer's articulated legitimate reasons."[45] This may include identifying such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [the City's] proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence."[46]

Head argues that the City's stated reasons for terminating him were pretextual because "it has presented conflicting reasons for Mr. Head's termination," namely that he was fired for attendance issues whereas the City now claims that he was terminated due to performance problems.[47] The record shows that Head's performance was unsatisfactory before his 2019 requests for FMLA leave and that his performance issues continued thereafter.[48] The record also demonstrates that Head took unapproved leave. Head has neither argued that these disciplinary actions violated the City's attendance policy nor averred that he was otherwise entitled to take leave without disciplinary consequences. Accordingly, summary judgment will be entered in favor of the City on Head's retaliation claim.

---

[45] *Lichtenstein*, 691 F.3d at 310 (citation omitted).

[46] *Id.* (citation and internal quotation marks omitted).

[47] Pl.'s Mem. Law Opp. Mot. Summ. J. [Doc. No. 13] at 13–14.

[48] Def.'s Mot. Summ. J. Ex. 2 [Doc. No. 12-2]; Def.'s Mot. Summ. J. Ex. 22 [Doc. No. 12-22]; Def.'s Mot. Summ. J. Ex. 23 [Doc. No. 12-23]; Def.'s Mot. Summ. J. Ex. 24 [Doc. No. 12-24].

IV. CONCLUSION

Although the need to miss work to care for a spouse may put an employee in a difficult position, "[t]he FMLA does not provide a private right of action for any employee, but rather only for eligible employees."[49] As Head has failed to show that genuine issues of material fact exist in this case, the City's motion for summary judgment will be granted. An order will be entered.

---

[49] *Sinacole v. iGate Capital*, 287 F. App'x 993, 996 (3d Cir. 2008).